**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SEAN-MICHAEL SMITH,

    Petitioner,

vs.                                                  Case No.:    3:16-cv-121-J-34PDB
                                                                                              3:13-cr-153-J-34PDB

UNITED STATES OF AMERICA,

    Respondent.
_____/

## **ORDER**

This case is before the Court on Petitioner Sean-Michael Smith's pro se "Motion for Review of the Unlawful Sentence in the Above Styled Action, Pursuant to 18 U.S.C. § 3742(a)(1)," filed on July 1, 2015. (Crim. Doc. 54; Civ. Doc. 1; Motion to Vacate).[1] After issuing a "Castro Notice" (Crim. Doc. 56), the Court construed Smith's filing as a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Crim. Doc. 58). Smith raises a single claim that his conviction and sentence for distribution of child pornography are unlawful because the Federal Bureau of Investigation (FBI) engaged in outrageous government conduct by engaging in possession, distribution, receipt, and solicitation of child pornography. Motion to Vacate at 1.

Also before the Court are the following motions:

1. Smith's "Motion to Request Leave for Out of Time Direct Appeal Premised Upon 'Plain Error,'" filed September 19, 2015, which the Court construed as a First Motion

---

[1] Citations to the record in the underlying criminal case, United States vs. Sean-Michael Smith, No. 3:13-cr-153-J-34PDB, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:16-cv-121-J-34PDB, will be denoted as "Civ. Doc. __."

1

for Leave to Amend and proposed amendment (Crim. Doc. 55; Civ. Doc. 2; First Motion for Leave to Amend);

2. Smith's Motion for Leave to Amend filed on May 3, 2016 (Civ. Doc. 9; Second Motion for Leave to Amend); and

3. Smith's Motions for Leave to Amend filed on June 2, 2018, and August 19, 2018, which are essentially identical to each other. (Civ. Doc. 19; Third Motion for Leave to Amend); (Civ. Doc. 20; Fourth Motion for Leave to Amend).

In the First and Second Motions for Leave to Amend, Smith sought to add various claims. However, Smith abandoned them through the Fourth Motion for Leave to Amend. Indeed in the latest motion he explains:

> Mr. Smith's original pro se motions were overly inclusive and need to be more concise in the interest of justice[.] The amendment will not contain any new substantive claims, but should clarify Mr. Smith's two primary claims, i.e., Mr. Smith's conviction is unconstitutional in violation of the Fifth Amendment Due Process requirement; and Mr. Smith's defense counsel provided constitutionally ineffective assistance.
>
> Mr. Smith intends by this amendment, to make his claims more precise and more amenable to efficient resolution. His claims reduced [sic] to:
>
> 1). Mr. Smith's conviction is unconstitutional inviolation [sic] of the Fifth Amendment's Due Process Clause:
>
> > a) Law enforcement agent downloaded files from Mr. Smith's computer, <u>without</u> his knowledge via a peer-to-peer <u>network</u>. Mr. Smith was not aware that the share function was activated as a default setting. Mr. Smith did not activate the share function. Mr. Smith did not knowingly distribute.
> >
> > b) Recently issued clariffying [sic] amendment 801 illustrates Congress' intent when enacting the distribution statutes. guidelines. [sic]
>
> 2). Mr. Smith's defense counsel provided constitutionally ineffective assistance:

> a). Counsel failed to understand the charged offense as it relates to facts and law. Thus, she was unable to clearly advise that Mr. Smith lacked the mens rea to commit the crime of distribution.
>
> b). Counsel coerced Mr. Smith to plead guilty by threatening him with the likelyhood [sic] he would recieved [sic] a longer sentence should he take his case to trial.

Fourth Motion for Leave to Amend at 1-2 (emphasis in original). After finding that the Fourth Motion for Leave to Amend mooted the First and Second Motions for Leave to Amend, the Court instructed the United States to respond to the Fourth Motion for Leave to Amend. (Civ. Doc. 21). The United States responded on September 19, 2018. (Civ. Doc. 22; Response). In the Response, the United States argues that each of Smith's requests for leave to amend raise claims that are untimely and do not relate back to the original Motion to Vacate, and alternatively, that the claims lack merit.

What remains to be resolved are Smith's original Motion to Vacate (Civ. Doc. 1) and the Fourth Motion for Leave to Amend (Civ. Doc. 20). As these motions are fully briefed, they are ripe for a decision.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252

---

[2] Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

3

F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, the Motion to Vacate and Fourth Motion for Leave to Amend are due to be denied.

**I.     Background**

On August 8, 2013, a grand jury sitting in the Middle District of Florida indicted Smith on a single count of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (Crim. Doc. 1; Indictment). Smith pled guilty to the charge without a written plea agreement. (See Crim. Doc. 59; Change of Plea Transcript) ("Plea Tr."). While under oath, Smith admitted that he searched for and viewed child pornography. Plea Tr. at 19-23. Smith further confessed to knowingly downloading and sharing child pornography using a peer-to-peer file-sharing program called Gnutella. Id. After the Court advised him as to each element of the offense, id. at 14-15, Smith admitted each one. Specifically, Smith acknowledged that he (1) knowingly distributed a visual depiction, (2) the visual depiction was transported in interstate commerce, (3) production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (4) the visual depiction was of a minor engaged in sexually explicit conduct, and (5) Smith knew that at least one of the performers depicted was a minor engaged in sexually explicit conduct. Id. at 25-26. Smith affirmed that his plea was knowing and voluntary, that nobody had threatened or coerced him into pleading guilty, and that he was not relying on any promises or understandings in doing so. Id. at 26-27. Smith also stated that he had fully discussed his case with his attorney, Lisa Call, and that he was satisfied with her representation. Id.

---

[3]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

4

at 28. In the end, Smith confirmed that it was his ultimate decision to plead guilty, id. at 29-31, after which the Court accepted his guilty plea (Crim. Doc. 41; Acceptance of Plea).

At the sentencing hearing, the Court determined that the total offense level under the United States Sentencing Guidelines was 34 and that Smith's Criminal History Category was I, yielding an advisory sentencing range of 151 to 188 months in prison. (Crim. Doc. 60; Sentencing Transcript at 4) ("Sent. Tr."). The Court varied well below the Guidelines range, sentencing Smith to a term of 72 months in prison. Id. at 26. The Court entered judgment on July 7, 2014 (Crim. Doc. 52; Judgment), after which Smith did not file a notice of appeal. As such, Smith's conviction and sentence became final 14 days later, on July 21, 2014, when the time to file a notice of appeal expired. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999).

Under 28 U.S.C. § 2255(f)(1), Smith had one year from July 21, 2014, or until July 21, 2015, to file a timely motion to vacate. Smith filed the Motion to Vacate on July 1, 2015 and the Fourth Motion for Leave to Amend on August 19, 2018.[4]

## II. Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C

---

[4] Smith filed the virtually-identical Third Motion for Leave to Amend on June 2, 2018. For the reasons given below, it makes no difference whether the Court examines the timeliness of the Third Motion for Leave to Amend or the Fourth Motion for Leave to Amend.

5

§2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979).

### A. The Motion to Vacate

As noted above, Smith argues that his conviction is unlawful because it was the product of outrageous government conduct. Motion to Vacate at 1. Smith asserts that he has "become aware" that the government, including "but not limited to" the FBI, participated in possession, distribution, receipt, and solicitation of child pornography. Id. at 1-2. He also contends that the government enticed people to commit unlawful sexual activity, and that the government supported the national market for child pornography "by operating and/or facilitating the operation of companies including but not limited to" LimeWire and Orange Bill Credit Processing Company. Id. Smith insists that he would not have violated the law but for the outrageous conduct of federal, state, and/or local law enforcement agents. Id. at 2.

Although it is not clear from the Motion to Vacate, Smith's later filings suggest that the conduct he refers to is what the FBI dubbed "Operation Pacifier." (See Civ. Doc. 10-1; USA Today Article).[5] According to a news article Smith appended to his Affidavit filed in this action, between February 20, 2015, and March 4, 2015, the FBI conducted a sweeping reverse sting operation when it hacked and passively operated "Playpen," a website on the dark web used for sharing and downloading child pornography. USA Today Article. After the FBI hacked into Playpen, it used the opportunity to infect the website with

---

5     See also https://www.fbi.gov/news/stories/playpen-creator-sentenced-to-30-years

6

malware, which allowed the FBI to identify the internet protocol addresses of more than 1,300 users. See id. The operation was controversial because instead of immediately shutting down the website, the FBI allowed individuals to continue uploading and downloading illicit material, albeit in an effort to catch the very people who disseminated child pornography on the web. See id. Despite the controversy, charges resulting from Operation Pacifier have withstood legal challenges in this Court and others, including against allegations that the operation constituted outrageous government conduct. United States v. Barnes, No. 3:15-cr-112-J-39PDB, 2017 WL 10296873, at *10 & n.14 (M.D. Fla. May 8, 2017) (collecting cases), report and recommendation adopted as supplemented, 2017 WL 10296872 (M.D. Fla. Sep. 1, 2017).

Regardless of the merits of any challenges to Operation Pacifier, Smith's claim fails because Operation Pacifier had nothing to do with him. As noted above, Operation Pacifier occurred in February and March of 2015. By contrast, Smith was downloading and sharing child pornography over the Gnutella network in June and July 2013, nearly a year and a half before Operation Pacifier took place. See Indictment at 1; Plea Tr. at 19-20. Therefore, even if engaging in Operation Pacifier amounted to outrageous government conduct, it would provide no basis for finding that Smith is entitled to any relief from his unrelated conviction.

Additionally, Smith waived any claim that his conviction resulted from outrageous government conduct when he pled guilty. "A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained." United States v. Wilson, 962 F.2d 996, 997 (11th Cir. 1992). Notably, a challenge to a conviction based on

outrageous government conduct is non-jurisdictional in nature. See United States v. Augustin, 661 F.3d 1105, 1122 n.10 (11th Cir. 2011). Therefore, a petitioner waives any argument that his conviction resulted from outrageous government conduct by pleading guilty. United States v. Dixon, 626 F. App'x 959, 962 n.2 (11th Cir. 2015).

Smith does not challenge the knowing and voluntary nature of his guilty plea in the Motion to Vacate. Moreover, the transcript of the plea colloquy shows that he pled guilty because he was in fact guilty, and that he made a free and informed choice in doing so. Plea Tr. at 9-31. Smith therefore waived his outrageous-government-conduct claim when he entered a knowing and voluntary plea of guilty. Dixon, 626 F. App'x at 962 n.2. Accordingly, relief on this claim is due to be denied.

### B. The Fourth Motion for Leave to Amend

In his Fourth Motion for Leave to Amend, Smith seeks to add two claims. First, Smith argues that his conviction violates the Due Process Clause of the Fifth Amendment because he did not activate the "share function" on his computer, he did not knowingly distribute child pornography, and because a law enforcement agent downloaded child pornography from his computer without Smith knowing it. Fourth Motion for Leave to Amend at 1-2. Relatedly, Smith claims that "amendment 801 [to the Sentencing Guidelines] illustrates Congress' intent when enacting the distribution statutes." Id. at 2.[6] Smith also asserts that his attorney gave ineffective assistance in connection with his guilty plea because she (a) failed to advise him that he lacked the mens rea to commit the crime

---

[6] Amendment 801, which became effective November 1, 2016, clarified that a defendant is not subject to a two-level distribution enhancement under U.S.S.G. § 2G2.2(b)(3) merely for using a peer-to-peer file sharing program unless the defendant knew of the file-sharing properties of the program. U.S.S.G., App'x C at 135-36 (2018).

8

of distributing child pornography and (b) coerced him into pleading guilty by threatening him that he would receive a lengthy sentence if he went to trial. Fourth Motion for Leave to Amend at 2.

As noted above, Smith filed the Fourth Motion for Leave to Amend on August 19, 2018, id. at 2, over three years after the statute of limitations under 28 U.S.C. § 2255(f)(1) expired. Having reviewed the Motion, the Court observes that nothing in it suggests that one of the alternative accrual dates under §§ 2255(f)(2)-(4) would apply to any of the claims sought to be asserted. Nor does Smith argue that he is entitled to equitable tolling. Nevertheless, the claims may be timely if they relate back under Rule 15(c), Federal Rules of Civil Procedure ("Rule(s)"), to the allegations of outrageous government conduct set forth in the original Motion to Vacate. Alternatively, Smith may avoid the operation of the statute of limitations if he is actually innocent, as he suggests in two short sentences near the end of the Fourth Motion for Leave to Amend. Fourth Motion for Leave to Amend at 2; see also Stevens v. United States, 466 F. App'x 789, 791 (11th Cir. 2012) (a court may consider an untimely § 2255 motion if refusing to consider the motion would result in an actually innocent person remaining imprisoned).

First, the Court will consider whether the claims relate back under Rule 15(c), then turn to the possibility of actual innocence. Rule 15 provides that "[a]n amendment to a pleading relates back to the date of the original pleading when … the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In Mayle v. Felix, 545 U.S. 644 (2005), the Supreme Court rejected a broad reading of "conduct, transaction, or occurrence" in habeas cases that would be "capacious" enough to allow

9

new claims to relate back merely because they arise from the same trial, conviction, or sentence. Id. at 656-64. In doing so, the Supreme Court approved a narrower reading of "conduct, transaction, or occurrence," which would "allow relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." Id. at 657 (citation omitted); see also id. at 664 ("So long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.") (footnote omitted).

In Davenport v. United States, 217 F.3d 1341 (11th Cir. 2000), for example, the petitioner alleged in his original § 2255 motion that

> (1) the substance involved did not meet the definition of "crack cocaine" because it did not contain sodium bicarbonate; (2) his sentence was based on an erroneous amount of drugs because the calculated weight included the moisture in the cocaine-based substance; (3) the government knowingly allowed a key government witness to perjure himself by falsely claiming that he did not expect to receive any benefits for testifying against Davenport; and (4) his counsel was ineffective for failing to raise the preceding three issues.

Id. at 1342-43. In a motion for leave to amend, which the petitioner filed after the statute of limitations had expired, the petitioner sought to add three new claims:

> that his counsel was ineffective for (1) allowing Davenport to be sentenced based on three grams of cocaine that were not part of the same course of conduct as the other forty-nine grams of cocaine, (2) relying on a summary lab report instead of requesting the complete lab report analyzing the three grams of cocaine, and (3) failing to advise him that a plea agreement might be possible.

Id. at 1343. The Eleventh Circuit found that the three claims did not relate back because they "arose from separate conduct and occurrences in both time and type." Id. at 1346. The court explained that "[t]he original claims … dealt with the chemical makeup of the

10

drugs, whereas the amended claims addressed the relationship between the drug transactions and his counsel's having improperly relied on a one-page lab summary instead of obtaining the full eleven-page lab report." Id. As for the petitioner's new claim that his counsel failed to advise him of the possibility of a plea agreement, the court explained that the petitioner's "original § 2255 motion contains no mention of any such pre-trial activity or inactivity." Id. Thus, the court found that the three new claims were time-barred and that the district court properly denied leave to amend.

In a similar way, the two claims in Smith's Fourth Motion for Leave to Amend do not relate back to the Motion to Vacate because the allegations do not pertain to the same conduct, transaction, or occurrence. Smith's allegation in the Motion to Vacate was that the government engaged in outrageous conduct by effectively participating in and facilitating the national market for child pornography. See Motion to Vacate at 1-2. The allegations in the Fourth Motion for Leave to Amend are that (1) Smith did not knowingly distribute child pornography and (2) that Smith's attorney gave ineffective assistance by failing to advise him that he lacked the necessary mens rea and by coercing him to change his plea. Fourth Motion for Leave to Amend at 1-2. These new allegations have nothing to do with Smith's claim of outrageous government conduct. The allegation of outrageous conduct concerned the methods and means by which the government investigated individuals who distributed child pornography. The allegations in the Fourth Motion for Leave to Amend concern whether Smith had the requisite mens rea to violate 18 U.S.C. § 2252(a)(2) and whether counsel gave ineffective assistance in connection with Smith's decision to plead guilty. In other words, the "new claims depend upon events separate in 'both time and type' from the originally raised episodes." Mayle, 545 U.S. at 657 (citation

omitted). Therefore, the claims raised in the Fourth Motion for Leave to Amend are not "tied to a common core of operative facts," id. at 664, and as such the new claims should not relate back to the timely filed Motion to Vacate.[7]

The Court further concludes that Smith is not entitled to raise these claims under the actual innocence exception. "[A]s it has been repeatedly emphasized, the actual innocence exception is a narrow exception." McKay v. United States, 657 F.3d 1190, 1198 (11th Cir. 2011) (emphasis in original) (citations omitted). Actual innocence means factual innocence, not mere legal insufficiency. Id. at 1197 (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)).

> To meet the "actual innocence" threshold requirement, a petitioner must show that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." [McQuiggan v. Perkins, — U.S. —, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013)]. A successful actual-innocence-gateway claim to overcome a procedural bar requires a petitioner to support his allegations of constitutional error "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L. Ed. 2d 808 (1995).

Smith v. United States, 637 F. App'x 572, 572 (11th Cir. 2016), cert. denied, 136 S. Ct. 2498, 195 L. Ed. 2d 832 (2016).

Here, Smith has not pointed to any newly discovered evidence that supports his conclusory assertion of actual innocence. See Fourth Motion for Leave to Amend at 2. To the contrary, the record refutes his claim that he did not knowingly distribute child

---

[7] While the Fourth Motion for Leave to Amend mooted the First and Second Motions for Leave to Amend, the Court agrees with the United States that the allegations in the First and Second Motions for Leave to Amend would not relate back either. See Response at 5-10. In the First and Second Motions for Leave to Amend, Smith raised various claims ranging from due process violations (based on trial court error) to ineffective assistance of counsel. However, none of these claims were based on the same core set of facts as the outrageous government conduct alleged in the Motion to Vacate.

12

pornography, that his counsel failed to advise him satisfactorily, or that counsel coerced him to plead guilty. Smith admitted under oath that he knowingly distributed child pornography. Plea Tr. at 25-26. Indeed, Smith specifically admitted that he knew that the peer-to-peer file-sharing program he used for downloading child pornography made the contents of his folders available to others on the web. Id. at 21, 22. When the Court asked Smith whether his attorney had explained the Indictment to him, whether he understood the charge, and whether his attorney answered any questions he had about the charge, Smith answered yes each time. Id. at 13-14. Smith also stated under oath that he had received ample opportunity to discuss the case with his attorney, and that he was satisfied with her representation. Id. at 28. Finally, when the Court asked Smith whether he was pleading guilty knowingly and voluntarily, free from any threats or coercion, Smith affirmed that he was. Id. at 26-27; see also id. at 29-31. Smith points to nothing to overcome the "strong presumption" that these sworn statements were true. United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). Thus, the record establishes that Smith pled guilty knowingly and freely, refuting any claim of actual innocence.

Because the allegations in the Fourth Motion for Leave to Amend do not relate back to the Motion to Vacate, and because they do not support applying the actual innocence exception, Smith cannot overcome § 2255(f)'s statute of limitations. As such, the Fourth Motion for Leave to Amend is due to be denied.[8]

---

[8] The Third Motion for Leave to Amend (Civ. Doc. 19) raised the same claims as the Fourth Motion for Leave to Amend. The only potentially meaningful difference is that Smith filed the Third Motion for Leave to Amend on June 2, 2018, whereas he filed the Fourth Motion for Leave to Amend on August 19, 2018. However, it makes no difference here because § 2255(f)(1)'s statute of limitations expired on July 21, 2015, making either motion for leave to amend untimely.

13

### III.     Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Smith seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Smith "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. Petitioner Sean-Michael Smith's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. Smith's First Motion for Leave to Amend (Civ. Doc. 2), Second Motion for Leave to Amend (Civ. Doc. 9), and Third Motion for Leave to Amend (Civ. Doc. 19) are **MOOT**.

3. Smith's Fourth Motion for Leave to Amend (Civ. Doc. 20) is **DENIED**.

4. The Clerk shall enter judgment in favor of the United States and against Sean-Michael Smith, and close the file.

5. If Smith appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 13th day of December, 2018.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner Sean-Michael Smith